UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RUSSELL C. MILLER and wife,   ]
JENNIFER MILLER,   ]
   ]
     Plaintiffs,   ]
   ]
v.   ]   No. 3-08-0281
   ]   JUDGE HAYNES
   ]
HOME DEPOT USA, INC.,   ]
   ]
     Defendant.   ]

M E M O R A N D U M

Plaintiffs, Russell C. Miller and his wife Jennifer Miller, Tennessee citizens, originally filed this action in Rutherford, County, Tennessee Circuit Court against the Defendant, Home Depot USA, Inc., a Delaware corporation, for retaliatory discharge and loss of consortium. The Defendant removed the action to this Court under 28 U.S.C. § 1332, the federal diversity statute, without objection.

Russell Miller's claim is that Home Depot terminated him after he pursued and restrained a suspect in Home Depot's parking lot in violation of Tennessee public policy. Jennifer Miller's claim for loss of consortium is derivative of her husband's claim.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 24), contending, in sum, that the Plaintiff was an "at-will" employee and his termination did not violate a clearly established public policy of Tennessee. In

response (Docket Entry No. 30) the Plaintiffs contend that Miller's termination violates clearly established Tennessee public policy, favoring rescue of persons in danger.

Also, before the Court is the Plaintiffs' motion for sanctions (Docket Entry No. 28), contending that they are entitled to an adverse inference from the Defendant's failure to preserve a videotape of the incident at issue. The Court decides the Plaintiffs' motion first as its resolution impacts the Court's consideration of the Defendant's motion for summary judgment.

For the reasons set forth below, the Court concludes that Defendant's motion for summary judgment should be granted and the Plaintiffs' motion for sanctions should be denied.

## I. MOTION FOR SANCTIONS

The Plaintiffs assert that the Defendant failed to maintain and produce a videotape that purportedly captured the incident giving rise to this lawsuit. As a result, the Plaintiffs seek sanctions, requesting the Court to (1) strike the Defendant's motion for summary judgment; (2) instruct the jury that they may infer that the lost or destroyed videotape would be favorable to the Plaintiffs; or (3) that in considering the motion for summary judgment the Court infer that the lost or destroyed videotape contained evidence favorable to the Plaintiffs.

A federal court's inherent powers allow it broad discretion to craft sanctions for spoliated evidence if appropriate. Adkins v.

2

*Wolever*, 554 F.3d 650, 651 (6th Cir. 2009) (en banc). "[W]e now recognize - - as does every other federal court of appeals to have addressed the question - - that a federal court's inherent powers include broad discretion to craft proper sanctions for spoliated evidence." *Id*. Under federal law, an adverse inference and an award of attorneys' fees are appropriate sanctions for spoliation without the necessity of bad faith. *Clark Const. Grp. Inc. v. City of Memphis*, 229 F.R.D. at 131, 139 (W.D. Tenn. 2005). *Clark* held that a rebuttable adverse sanction is appropriate:

> In this Circuit, "[i]n general, a court may not allow an inference that a party destroyed evidence that is in its control, unless the party did so in bad faith." *Tucker v. General Motors Corp.*, No. 91-3019, 1991 WL 193458, at *2 (6th Cir. Sept. 30, 1991). The Court, however, stresses that the Sixth Circuit, in an unpublished opinion, notes that a negative inference should *generally* not be allowed absent bad faith. Therefore, the Court should not be precluded from imposing a rebuttable adverse inference sanction against a party because the party did not act in bad faith.

*Id*. (footnote omitted) (emphasis in original).

Where the discovery violations and abuses cause spoliation, courts also seek to "place the non-spoiler in a position similar to where it would have been prior" to the spoliation. *Clark*, 229 F.R.D. at 139.

For purposes of deciding the motion for summary judgment, the Defendant accepts the Plaintiffs' version of the facts and does not dispute Plaintiff Russell Miller's testimony about the events Plaintiff Russell Miller observed on August 20, 2007. Nor do the

3

Plaintiffs identify any material facts that should be inferred in their favor from the missing videotape. The Plaintiffs have failed to show any relevance the videotape could be to the litigation or how they are prejudiced by the unavailability of the videotape. Accordingly, the Court concludes that the Plaintiffs' motion should be denied.

## II. FINDINGS OF FACT[1]

Russell Miller was the store manager for Home Depot Store 707 in Murfreesboro, Tennessee. (Docket Entry No. 33, Plaintiffs' response to Defendant's Statement of Undisputed Facts at ¶ 6). On Monday August 20, 2007, approximately a few minutes after the store's 6:00 a.m. opening, Miller and Assistant Manager Robert Weese, assistant manager, were inspecting the back of the building because the area needed to be cleaned, when they received a call via "walkie talkie" from Erris Purnell, the head cashier at the front of the store. (Docket Entry No. 35, Defendant's response to Plaintiffs' Statements of Undisputed Facts at ¶¶ 15-18, 21).

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Because there are not any material factual disputes, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

According to Miller, he heard the sound of banging and screaming over the call, and Weese and he ran to the front of the store. Id. at ¶¶ 19, 23. Not seeing anything unusual inside the front of the store, Weese and Miller ran out the front door and observed Brian Loso and Dustin Chester, two Home Depot employees, standing with another man near a Coca-Cola vending machine at the store's front entrance. Id. at ¶¶ 23-25. Miller and Weese approached the three men, and Miller noticed that the third man was holding a crowbar in his left hand and a handful of cash in his right hand. (Docket Entry No. 33 at ¶ 25). Before he reached the group, Miller heard Loso tell the man to give him back the money. Id. at ¶ 27. The man then threw the crowbar toward a nearby trash can and began running away from the store. Id. at ¶ 28.

Miller, who was running, never came to a stop and pursued the man off the "apron," i.e. the area in the front of the store where the concrete meets the asphalt. Id. at ¶ 29. The Defendant's three employees also pursued the man. Id. at ¶¶ 31-33. Chester caught the man, and Miller straddled the man to restrain him from fleeing while they waited for the police. Id. at ¶¶ 36-38. At that point, Miller was approximately ten to twelve feet off the apron. (Docket Entry No. 35 at ¶ 53).

According to Miller, he pursued the suspect because he believed the individual to be disturbed and was concerned for the safety of his fellow associates "and anybody who was around him."

5

Id. at ¶¶ 37-40. Miller explained that he did not know what the suspect was going to do and whether he was going to hurt other people. Id. at ¶ 43. When asked if the suspect was about to hurt someone, Miller admitted, "No, he wasn't." (Docket Entry No. 32, attachment thereto, Exhibit No. 7, Miller Deposition at p. 130) (quoting testimony).

The Defendant conducted an investigation of the incident. (Docket Entry No. 33 at ¶¶ 43, 45-48). On August 27, 2007, the Defendant terminated Miller from his employment for violation of Home Depot's Code of Conduct-Asset Protection policy that provides: "Pursuing or apprehending a subject without being authorized" is a major work violation that will normally result in termination for a first offense. Id. at ¶¶ 58-62. Miller had signed a memorandum dated July 17, 2000, instructing district mangers, store managers and assistant managers not to detain shoplifters and to only allow loss prevention supervisors to apprehend and detain shoplifting suspects. (Docket Entry No. 35 at ¶ 13; Docket Entry No. 32, attachment thereto, Exhibit No. 1). Miller did not have an employment contract with the Defendant. (Docket Entry No. 33 at ¶ 2).

### III. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee

Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

7

`genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine

8

issues of material fact.  Sims v. Memphis Processors, Inc., 926
F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak,
Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)).  "So long as the movant
has met its initial burden of `demonstrat[ing] the absence of a
genuine issue of material fact,' the nonmoving party then `must set
forth specific facts showing that there is a genuine issue for
trial.'"  Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United
States Court of Appeals for the Sixth Circuit warned that "the
respondent must adduce more than a scintilla of evidence to
overcome the motion [and]. . . must `present affirmative evidence
in order to defeat a properly supported motion for summary
judgment.'"  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479
(6th Cir. 1989)(quoting Liberty Lobby).  Moreover, the Court of
Appeals explained that:

> The respondent must "do more than simply show that there
> is some metaphysical doubt as to the material facts."
> Further, "[w]here the record taken as a whole could not
> lead a rational trier of fact to find" for the
> respondent, the motion should be granted.  The trial
> court has at least some discretion to determine whether
> the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted).  See also Hutt v.
Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A
court deciding a motion for summary judgment must determine
`whether the evidence presents a sufficient disagreement to require

9

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

> It is likewise true that:
>
> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in

10

favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon

11

which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
>
> 6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.
>
> 7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

12

8.    The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9.    The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10.    The trial court has more discretion than in the "old era" in evaluating the respondent's evidence.    The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts."    Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted.    The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

The Defendant contends that the Plaintiffs cannot establish that the reason for Miller's discharge violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision.    The Plaintiffs contend that Miller's

13

termination violates clearly established Tennessee public policy, namely Tenn. Code Ann. §§ 39-11-612, -615 and -621 and the "rescue doctrine."

Tennessee has long recognized the employment at-will doctrine, under which the "concomitant right of either the employer or the employee to terminate the employment relationship at any time, for good cause, bad cause, or no cause at all, without being guilty of a legal wrong." Stein v. Davidson Hotel Co., 945 S.W.2d 714, 716 (Tenn. 1997). Tennessee courts also recognize exceptions to this doctrine: "In Tennessee an employee-at-will generally may not be discharged for attempting to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy which is evidenced by an unambiguous constitutional, statutory, or regulatory provision." Id. at 717. These exceptions attempt to strike a balance between "the employment-at-will doctrine and rights granted employees under well-defined expressions of public policy." Id. Thus, "the tort action of retaliatory or wrongful discharge is available to employees discharged as a consequence of an employer's violation of a clearly expressed public policy." Id. To be sure, the Tennessee Supreme Court has "emphasized that the exception to the employment-at-will doctrine must be narrowly applied and not be permitted to consume the general rule." Id. at 717 n.3 (citing Chism v. Mid-South Milling Co., 762 S.W.2d 552, 556 (Tenn. 1988)).

14

To establish a retaliatory discharge claim in violation of public policy, a plaintiff must prove the following:

> (1) that an employment-at-will relationship existed; (2) that the employee was discharged, (3) that the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy.

Crews v. Buckman Laboratories Int'l, Inc., 78 S.W.3d 852, 862 (Tenn. 2002) (citations omitted).

As to its role in discerning public policy, the Tennessee Supreme Court has stated:

> This Court can know nothing of public policy except from the constitution and the laws, and the course of administration and decision. It has no legislative powers. It cannot amend or modify any legislative acts. It cannot examine questions as expedient or inexpedient, or as politic or impolitic. Considerations of that sort must, in general, be addressed to the legislature. Questions of policy determined there are concluded here.

> There are cases, it is true, in which arguments drawn from public policy must have large influence; but these are cases in which the course of legislation and administration do not leave any doubt upon the question what public policy is, and in which what would otherwise be obscure or of doubtful interpretation, may be cleared and resolved by reference to what is already received and established.

Stein, 945 S.W.2d at 717 (quoting Nashville Ry. & Light Co. v. Lawson, 144 Tenn. 78, 91, 229 S.W. 741, 744 (1920) (with other citation omitted)). Tennessee courts do not "engage in

15

hypothetical guessing to fashion public policy," nor do they "attempt to discern public policy from the common law." <u>Id</u>.

## A. RUSSELL MILLER

Miller contends that his conduct was protected by Tenn. Code Ann. §§ 39-11-612, -615 and -621. Tennessee Code Ann. § 39-11-612, pertaining to the defense of others, provides:

> A person is justified in threatening or using force against another to protect a third person, if:
>
> > (1) Under the circumstances as the person reasonably believes them to be, the person would be justified under § 39-11-611[2] in threatening or using force to protect against the use or attempted use of unlawful force reasonably believed to be threatening the third person sought to be protected; and
> >
> > (2) The person reasonably believes that the intervention is immediately necessary to protect the third person.

<u>Id</u>. Tennessee Code Ann. § 39-11-615 states that "A person is justified in . . . using force against another to protect real or personal property of a third person," while Tenn. Code Ann. § 39-11-621 provides that "A private citizen, in making an arrest authorized by law, may use force reasonably necessary to accomplish the arrest of an individual who flees or resists the arrest[.]"

---

[2]Tenn. Code Ann. § 39-11-611(b)(1), pertaining to self defense, provides, in relevant part, "a person . . . has no duty to retreat before threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force."

16

For his contention that these statutes establish clear public policy in defense of his conduct, Miller relies on <u>Little v. Eastgate of Jackson, LLC</u>, No. W2006-01846-COA-R9-CV, 2007 WL 1202431, at *1 (Tenn. Ct. App. April 24, 2007). In <u>Little</u> the plaintiff, an at-will employee, was at work when he witnessed a woman across the street being physically assaulted. <u>Id</u>. at *1. The plaintiff grabbed a baseball bat, left the work premises and came to the aid of the woman by yelling and gesturing with the bat, causing the assailant to flee. The plaintiff was subsequently fired for leaving the work premises. The plaintiff sued, contending that his termination violated public policy. <u>Id</u>.

In concluding that the plaintiff stated a claim for retaliatory discharge, the Tennessee Court of Appeals cited Tenn. Code Ann. § 39-11-612 and also § 39-11-504 (2003) (duress); § 39-11-621 (2003) (use of deadly force by a private citizen); and § 39-17-1322 (2003) (defenses to prosecution for an offense against public health, safety, and welfare) as statutes evidencing "the unambiguous legislative intent to pronounce the Tennessee public policy of encouraging citizens to rescue a person reasonably believed to be in imminent danger of death or serious bodily harm, and to protect a citizen who undertakes such heroic action from negative repercussions." <u>Id</u>. at *9. However, the Court went on to state:

> [W]e decline to adopt a broad "Good Samaritan" doctrine protecting all conduct undertaken in aid of another.

17

> Rather, the public policy demonstrated in the statute extends only to situations in which the employee took action to rescue or protect another reasonably believed to be in imminent danger of death or serious bodily harm. Such a narrow public policy exception is unlikely to consume or eliminate the general rule favoring the employment-at-will doctrine.

Id.

Miller's reliance on <u>Little</u> and Tenn. Code Ann. § 39-11-612 is misplaced. <u>Little</u> narrowly confined this exception to where a third party is in "imminent danger of death or serious bodily harm." The undisputed facts here do not reveal that anyone was in such danger. The suspect made no threats, and when confronted by Home Depot employees, the suspect threw down his crowbar and ran away from the store. Moreover, Miller admitted that the suspect was not about to hurt anyone when he pursued him. The evidence does not support Miller's contention that he was coming to the aid of another who was in "imminent danger of death or serious bodily harm."

Further, Miller's reliance on Tennessee Code Ann. §§ 39-11-615 and 621 in conjunction with <u>Little</u> is equally misplaced. <u>Little</u> specifically disavowed adopting a "broad 'Good Samaritan' doctrine protecting all conduct undertaken in aid of another." <u>Little</u>'s rationale for extending the public policy exception was based on "Tennessee's public policy of placing a high priority on the sanctity of human life." 2007 WL 1202431, at *9. Sections 39-11-615 and 621 do not further that public policy because those

18

statutes apply to the defense of property and arrest by a private citizen. Extending the public policy to the facts here would threaten "to consume or eliminate the general rule favoring the employment-at-will doctrine." Id. The Court also notes that Miller cites these statues for his contention for a public policy exception for the defense of a third party and does not argue that the public policy exception should be extended in cases for the defense of property. Accordingly, because the undisputed facts do not reveal that anyone at the scene was in "imminent danger of death or serious bodily harm," Miller's reliance on Tennessee Code Ann. §§ 39-11-615 and 621 is unavailing.

Lastly, Miller asserts that the Tennessee common law "rescue doctrine" also establishes a public policy exception to at-will employment. Yet, the Tennessee Supreme Court has specifically warned that Tennessee courts do not "attempt to discern public policy from the common law." Stein, 945 S.W.2d at 717. Instead a plaintiff must show "a clear public policy which is evidenced by an unambiguous constitutional, statutory, or regulatory provision." Id. Thus, Miller's reliance on the common law for the "rescue doctrine" is misplaced.

The Court concludes that the undisputed facts do not establish any imminent danger at the time of Miller's conduct so as to qualify his conduct as pursuant to a clear mandate of public policy in an unambiguous constitutional, statutory, or regulatory

19

provision. As an at-will employer, the Defendant did not violate any such law when terminating Miller for pursuing or apprehending a subject without authorization in violation of the Defendant's stated policy. Accordingly, Miller's claim for retaliatory discharge is without merit.

### B. JENNIFER MILLER

Loss of consortium claims are derivative of the spouse's claims. Hunley v. Silver Furniture Mfg. Co., 38 S.W.3d 555, 557 (Tenn. 2001). Because Plaintiff Russell Miller's claim fails, Plaintiff Jennifer Miller's claim for loss of consortium likewise fails.

### IV. CONCLUSION

Accordingly, the Defendant's motion for summary judgment (Docket Entry No. 24) should be granted, and the Plaintiffs' motion for sanctions (Docket Entry No. 28) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 28 day of January, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge

20